IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-01374-CMA-BNB

RONALD HUTCHINSON,

Plaintiff,

v.

ANNIE HOLESTINE, Administrative Director, individually,
EILEEN NEWMAN, Case Manager Supervisor, individually, and
LES GODWIN, Community Parole Officer, individually,

Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

This matter arises on the following motions (the "Motions"):

1.  Defendant Godwin's **Motion to Dismiss** [Doc. #32, filed 12/22/2010] (the "Godwin

Motion"); and

2.  **Defendant Holestine and Newman's Motion to Dismiss** [Doc. #40, filed

01/19/2011] (the "Holestine Motion").

I respectfully RECOMMEND that the Godwin Motion be GRANTED and the Holestine

Motion be GRANTED IN PART and DENIED IN PART.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v.

Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however,

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.

Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. <u>City of Los Angeles v. Preferred Communications, Inc.</u>, 476 U.S. 488, 493 (1986); <u>Mitchell v. King</u>, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. <u>Alvarado v. KOB-TV, L.L.C.</u>, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), overruled on other grounds by <u>Davis v. Scherer</u>, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiff filed his Second Amended Prisoner Complaint on October 18, 2010 [Doc. #16] (the "Complaint"). The Complaint contains the following allegations:

1. On March 6, 2009, the plaintiff was transferred from prison to the Williams Street Center, a community corrections facility in Denver. *Complaint*, p. 4.[1]

2. In June 2009, the plaintiff filed a grievance which stated that Case Manager Supervisor Eileen Newman and another staff member denied him access to the court. <u>Id.</u> at p. 5, ¶ 3.

3. On September 20, 2009, the plaintiff was told to leave the day room because he had been placed on suspended privileges. The plaintiff stated that he had not done anything to be placed on suspended privileges. He was told to leave the day room until the situation was

---

[1]The Complaint is not consecutively paginated. Therefore, I cite to the page numbers of the Complaint as they are assigned by the court's docketing system.

straightened out.  He was not allowed visits, use of the telephone, or any other privileges.  <u>Id.</u> at p. 5, ¶ 4.

4.   On September 23, 2009, the plaintiff spoke with defendant Newman about being placed on suspended privileges.  Ms. Newman checked the computer and "it was confirmed that Plaintiff had been placed on SP for no apparent reason."[2]  <u>Id.</u> at ¶ 5.

5.   The plaintiff informed Ms. Newman that he intended to file a grievance, and he asked for a grievance form.  He left Ms. Newman's office to complete the form.  <u>Id.</u> at ¶ 6.

6.   Approximately twenty minutes later, the plaintiff was informed that the Administrative Director, Annie Holestine, wanted to see him in her office.  Ms. Holestine and Ms. Newman were both present in the office.  Ms. Holestine accused the plaintiff of causing problems by filing grievances.  Ms. Holestine told the plaintiff that she was giving him two weeks to get a job or he would be sent back to prison.  <u>Id.</u> at pp. 5-6, ¶ 7.

7.   There were numerous residents that were unemployed at the facility but were not subjected to the same treatment.  <u>Id.</u> at p. 6, ¶ 8.

8.   Later that afternoon, Ms. Holestine, Ms. Newman, and Community Parole Officer Les Godwin called the plaintiff back into the office.  The plaintiff was "given a contract to get a job."  The contract had been drafted by Ms. Holestine and Ms. Newman.  The plaintiff stated that he was being singled out because he had filed a grievance for being placed on suspended privileges.  <u>Id.</u> at ¶ 9.

---

[2]I have quoted the plaintiff's filings as written, without correction or acknowledgment of error.

9.   On September 24, 2009, the plaintiff filed a grievance regarding all of the issues that had taken place on September 23, 2009.  Id. at ¶ 10.

10.   On September 28, 2009, Ms. Newman wrote a "frivolous incident report on the Plaintiff for disobeying a direct order."  Id. at ¶ 11.

11.   On October 15, 2009, Ms. Newman conspired with a new case manager, Peter Jensen,[3] to draft another job contract which contained the same requirements as the first contract. The plaintiff again stated that no other residents were being subjected to the same treatment.  Mr. Jensen wrote another incident report stating that the plaintiff had failed to obtain employment within the time period required in the first contract.  No other resident was being subjected to the same scrutiny as the plaintiff, nor were they receiving incident reports for the same actions.  Id. at pp. 6-7, ¶ 12.

12.   On October 20, 2009, the plaintiff filed another grievance which stated that Ms. Holestine, Ms. Newman, and Mr. Jensen were retaliating against him by filing frivolous incident reports designed to deter him from using the grievance process.  Id. at p. 7, ¶ 13.

13.   On October 21, 2009, Mr. Jensen wrote two additional incident reports stating that the plaintiff had disobeyed a direct order by failing to go to three job location sites.  Id. at ¶ 14.

14.   At a facility meeting on the same day, Mr. Holestine, Ms. Newman, Mr. Jensen, and Mr. Godwin conspired to reduce the plaintiff's access to the law library from four days per week to one day per week.  The plaintiff's library time was reduced to deprive him of the opportunity to file grievances.  Id. at ¶ 15.

---

[3]Mr. Jensen was dismissed without prejudice on March 11, 2011 [Doc. #57].

15.   On November 2, 2009, the plaintiff filed another grievance stating that the defendants were continuing to retaliate against him.  "The actions of the defendant's deprived the Plaintiff of the opportunity to prepare litigation for the court as well as seek redress for the grievances which the Plaintiff had filed."  Id. at p. 8, ¶ 17.

16.   In November 2009, Mr. Jensen denied the plaintiff a Thanksgiving day pass and a weekly allowance.  Other similarly situated residents were allowed passes and allowances in November.  Id. at ¶ 18.

17.   On December 6, 2009, the plaintiff was tested for illegal substances.  On December 9, 2009, his urinalysis test was reported positive. The plaintiff was arrested and terminated from the Williams Street Center program.  Other residents who had one positive urinalysis and "and were similarly situated" were not arrested and terminated from the program.  Some residents were given write-ups and suspended privileges; others were sent to a mountain park work program for 30 days and returned to the facility.  Id. at ¶ 19.

18.   The defendants' "acts of reprisal" caused the plaintiff to be terminated from the Williams Street Center and caused him to lose his job at Pinkard Construction where he was employed before being regressed back to prison.  Id. at ¶ 20.

The Complaint asserts four claims for relief.  Claim One alleges that Holestine, Newman, Jensen, and Godwin denied the plaintiff access to the court by reducing his library time from four days per week to one day per week for no reason in violation of his First Amendment rights. Claim One further alleges that the plaintiff's library time was reduced in retaliation for filing grievances.  Id. at pp. 9-10.

Claim Two alleges that in retaliation for filing grievances, Holestine and Newman conspired to place the plaintiff on suspended privileges; forced plaintiff to sign a job contract; and threatened to have him terminated from the Williams Street Center program and sent back to prison. Id. at p. 11.

Claim Three alleges that Newman and Jensen violated the plaintiff's equal protection rights when they forced him to sign a job contract on October 15, 2009. Id. at p. 12.

Claim Four alleges that Holestine, Newman, and Godwin violated the plaintiff's equal protection rights when they arrested him on December 9, 2009, and sent him back to prison for because of his positive urinalysis test.[4]  Claim Four further alleges that the defendants' actions were also taken in retaliation for filing grievances. Id. at p. 13.

The plaintiff invokes the court's jurisdiction under 42 U.S.C. §§ 1983 and 1985. Id. at p. 4. The plaintiff seeks compensatory and punitive damages. Id. at pp. 15-16.

## III.  ANALYSIS

### A.  Access to Courts

Claim One alleges that Holestine, Newman, Jensen, and Godwin violated the plaintiff's First Amendment right to access the court by reducing his library time from four days per week to one day per week for no reason. Id. at pp. 9-10.  The right of access to the courts is a fundamental constitutional right. Bounds v. Smith, 430 U.S. 817, 828 (1977).  However, an

---

[4]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").  In addition, to the extent the plaintiff attempts to add claims or change his claims in his responses to the defendants' Motions, I will not address claims raised for the first time in a brief opposing a dispositive motion.

inmate alleging denial of access to the courts must allege an actual injury.  Lewis v. Casey, 518

U.S. 343, 349 (1996).  To establish actual injury, the inmate must show that "the denial of legal

resources hindered the prisoner's efforts to pursue a nonfrivolous claim."  Id. at 356.  Penrod v.

Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing Lewis, 518 U.S. at 351).

    In Claim One, the plaintiff states that he was "denied the opportunity to pursue other

legal matters in court, as well as other grievances which had been filed."  In the description of

the nature of his case, the plaintiff states that "[t]he actions of the defendant's deprived the

Plaintiff of the opportunity to prepare litigation for the court as well as seek redress for the

grievances which the Plaintiff had filed."  *Complaint*, p. 8, ¶ 17.  These vague and conclusory

allegations are inadequate to support a claim for denial of access to the courts.

    The plaintiff also cites to Exhibit 13 in support of this claim.  Id.  Exhibit 13 is attached

to the plaintiff's initial Complaint [Doc. #3] and is a copy of an Informal Grievance Form

submitted on November 2, 2009.  In the Informal Grievance Form, the plaintiff states:

> My legal library access has been denied and the time that I was
> allowed to go was taken.  All this has hindered my process in
> preparing my legal defense.  I am currently in the United States
> District Court.  The last two weeks I have not been allowed legal
> law library access.  I am a Pro-Se, Litigant, representing myself in
> a very complexed and difficult matter.  There is no designated area
> to study, research or prepare motions here at Williams Street
> Center.  This administration has not only harassed me, But have
> been of no assistance concerning this matter.  I have been litigating
> this matter for over four years.  It is very important that this
> particular situation issue be addressed, and I am given the
> opportunity to adequately prepare my defense while here at
> Williams Street Center.

Id. at Ex. 13, p. 2 of 2.

The plaintiff provides only conclusory statements that preparation of his legal defense was hindered.  He does not identify the nature of the case, *i.e.* criminal or civil; the legal resources that were unavailable; or how the alleged lack of resources hindered his efforts to pursue a nonfrivolous claim.  The Motions should be granted insofar as they seek dismissal of Claim One's allegations regarding access to the courts.

## B   Retaliation

Claim One alleges that Holestine, Newman, and Godwin reduced the plaintiff's library time in retaliation for filing grievances.  *Complaint*, pp. 9-10.  Claim Two alleges that in retaliation for filing grievances, Holestine and Newman conspired to place the plaintiff on suspended privileges; forced plaintiff to sign a "job contract"; and threatened to have him terminated from the Williams Street Center program and sent back to prison.  Id. at p. 11.  Claim Four alleges that in retaliation for filing grievances, Holestine, Newman, and Godwin arrested the plaintiff on December 9, 2009, and sent him back to prison for because of his positive urinalysis test.  Id. at p. 13.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his rights to access the courts."  Smith v. Mashner, 899 F.2d 940, 947 (10th Cir. 1990).  "This principle applies even if the action taken in retaliation would be otherwise permissible."  Id. at 948.  An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity."  Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).  Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place."  Id. (quotations and

citation omitted).  "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Id. (quotations and citation omitted) (emphasis in original).

The presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation.  See Smith, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him--circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as "providing some support for an inference of retaliation"); Harris v. Fleming, 839 F.2d 1232, 1236-38 (7th Cir. 1988) (finding that the pattern and timing of firings and cell transfers were sufficient to establish a question of retaliation).

In an attempt to establish a chronology of retaliatory events, the plaintiff lists negative events that occurred over the final three months of his stay at the Williams Street Center, and he attempts to link them together by alleging that all of the identified actors were conspiring to violate his constitutional rights.  His allegations of conspiracy are conclusory, and the chronology of negative events impacting the plaintiff are not sufficiently cohesive to constitute a pattern of retaliation by any one defendant.

### 1.  Claim Two: Suspended Privileges

The plaintiff alleges that he filed his first grievance in June 2009 and was placed on suspended privileges on September 20, 2009.  He further alleges that on September 23, 2009,

Newman checked the computer in response to the plaintiff's inquiry and confirmed that he had

been placed on suspended privileges for no apparent reason.

Claim Two asserts that Newman and Holestine conspired to place the plaintiff on

restricted privileges in retaliation for filing the June 2009 grievance.  The Complaint's

allegations are too tenuous to state a claim for retaliation based on the suspension of privileges.

The alleged retaliation took place three months after the grievance was filed--a fairly long period

of time considering the small setting of the facility.  Moreover, Holestine's alleged involvement

in suspending his privileges is not supported by any factual allegations.  To the contrary, the

plaintiff alleges that Ms. Holestine became involved *after* the privileges were suspended and

after Newman checked the computer.  The Holestine Motion should be granted insofar as it

seeks dismissal of the allegations of retaliation regarding placement on restricted privileges

contained in Claim Tow

### 2.   Claim Two: Job Contract and Threats

The plaintiff alleges that on September 23, 2009, he informed Newman that he intended

to file a grievance regarding his placement on restricted privileges; twenty minutes later, he was

called to Holestine's office; Holestine accused him of causing problems by filing grievances and

told the plaintiff that she was giving him two weeks to get a job or he would be sent back to

prison; later that afternoon, Holestine, Newman, and Godwin met with the plaintiff and he was

"given a contract to get a job"; the contract was drafted by Holestine and Newman; and there

were numerous unemployed residents at the facility that were not subjected to this treatment.

Claim Two alleges that in retaliation for filing grievances, Holestine and Newman

conspired to force the plaintiff to sign a job contract and threatened to send him back to prison.

The plaintiff alleges that twenty minutes after he announced his intention to file a grievance, Holestine told him his grievances were a problem and that he would have to get a job or be sent back to prison.  These allegations are sufficient to state a claim that Holestine retaliated against him for filing grievances.  They are not sufficient to state a claim against Newman.

The Holestine Motion should be denied insofar as it seeks dismissal of Claim Two's allegations of retaliation regarding Holestine's involvement in forcing the plaintiff to sign a job contract and threatening to send him back to prison.  The Holestine Motion should be granted insofar as it seeks dismissal of Claim Two's allegations of retaliation regarding Newman's involvement in forcing the plaintiff to sign a job contract and threatening to send him back to prison.

### 3.  Claim One: Reduced Library Time

The Complaint alleges that the plaintiff filed his second grievance on September 24, 2009, complaining about the events of September 23, 2009.  He filed his third grievance on October 20, 2009, stating that Holestine, Newman, and Jensen were retaliating against him by filing frivolous incident reports.  At a facility meeting on October 21, 2009, Holestine, Newman, Jensen, and Godwin conspired to reduce the plaintiff's law library access from four days per week to one day per week.

Claim One alleges that Holestine, Newman, and Godwin reduced the plaintiff's library time in retaliation for filing grievances.  He also claims that the library time was reduced specifically to deprive him of the opportunity to file grievances.  *Complaint*, p. 7, ¶ 15.  Although the reduction in library time occurred one day after the plaintiff filed his third grievance, the temporal proximity of the events, without more, is insufficient to show that but for

retaliatory motive, the reduction would not have occurred.[5]  The Motions should be granted

insofar as they seek dismissal of Claim One's allegations of retaliation regarding reduction of

library time.

### 4.  Claim Four: Termination from the Program

The plaintiff submitted his fourth grievance on November 2, 2009, stating that the

defendants were continuing to retaliate against him.  On December 9, 2009, the plaintiff's

urinalysis test was reported as positive.  The plaintiff was arrested and terminated from the

Williams Street Center program.  Claim Four alleges that on December 9, 2009, and in

retaliation for filing grievances, Holestine, Newman, and Godwin arrested him and sent him

back to prison because of his positive urinalysis test although other residents were not terminated

after one positive test.

More than one month passed between the filing of the grievance and the plaintiff's

termination from the program.  However, the plaintiff was terminated just days after his

urinalysis came back positive.  Therefore, it is reasonable to infer that the plaintiff was

terminated from the program because he had a positive urinalysis, not because he filed a

grievance.  The plaintiff attempts to establish that he would not have been terminated but for

retaliatory motive by stating that other residents were not terminated after one positive

urinalysis.  This allegation is conclusory.

The Complaint lacks sufficient facts from which to infer that but for his grievances the

plaintiff would not have been terminated from the program.  In addition, there are no facts

---

[5]I note that the plaintiff filed a fourth grievance on November 2, 2009.  Therefore, the
reduced library time did not prevent him from filing grievances.

alleged from which to reasonably infer that Godwin even knew of the grievances.  The Motions should be granted insofar as they seek dismissal of Claim Four's allegations of retaliation regarding the defendants sending the plaintiff back to prison after a positive urinalysis test.

### C.  Equal Protection

Claim Three alleges that Newman violated the plaintiff's equal protection rights when she and Jensen forced him to sign a job contract on October 15, 2009.  Complaint, p. 12.  Claim Four alleges that Holestine, Newman, and Godwin violated the plaintiff's equal protection rights when they arrested him on December 9, 2009, and sent him back to prison because of his positive urinalysis test.  Id. at p. 13.

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend XIV, § 1.  Equal protection mandates that the government shall treat similarly situated persons alike.  Adarand Constructors, Inc. v. Slater, 228 F.3d 1147, 1152 (10th Cir. 2000).

The Complaint does not allege any facts that would invoke the equal protection clause.  See Fogle v. Pierson, 435 F.3d 1252, 1261 (10th Cir. 2006) (stating that where the prison's actions are discretionary, it is not plausible to claim that there are other inmates who are similar in every relevant respect for purposes of equal protection claims).  The Motions should be granted insofar as they seek dismissal of the plaintiff's equal protection claims.

### D.  Conspiracy

Several of the plaintiff's claims allege a conspiracy between the defendants.  In addition, the plaintiff asserts jurisdiction under 42 U.S.C. § 1985, which prohibits certain conspiratorial

13

activities.  In order to state a claim for conspiracy, a plaintiff must "allege specific facts showing agreement and concerted action" among the defendants.  Hunt v. Bennet, 17 F.3d 1263, 1266 (10th Cir. 1994).  "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim" Id.

The plaintiff's claims regarding conspiracy are wholly conclusory.  A complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."  Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations and citation omitted).  The plaintiff has failed to allege any facts from which to infer a plausible conspiracy between the defendants.

Additionally, in order to succeed on his conspiracy claim, the plaintiff must prove both the existence of a conspiracy and the deprivation of a constitutional right.  Dixon v. City of Lawton, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).  Because the plaintiff has failed to establish the existence of any constitutional violations, his conspiracy claim must fail.

### E.  Qualified Immunity

Defendant Godwin asserts that he is entitled to qualified immunity.  *Godwin Motion*, p. 7. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be

14

sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[6]

The plaintiff has failed to sufficiently allege that defendant Godwin violated his constitutional rights. Accordingly, Godwin is entitled to qualified immunity insofar as he is sued in his individual capacity.

## IV.   CONCLUSION

I respectfully RECOMMEND:

(1)      The Godwin Motion [Doc. # 32] should be GRANTED; and

(2)      The Holestine Motion [Doc. # 40] should be GRANTED IN PART and DENIED IN PART as follows:

• DENIED insofar as it seeks to dismiss the allegations in Claim Two of retaliation regarding Holestine's involvement in forcing the plaintiff to sign a job contract and threatening to send him back to prison, and

• GRANTED in all other respects.

---

[6]The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S.223, __, 129 S. Ct. 808, 818 (2009); Manzanares v. Higdon, 2009 WL 2430643 *3 n.6 (10th Cir. Aug. 10, 2009).

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. <u>In re Key Energy Resources Inc.</u>, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated June 3, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge