**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-01374-CMA-BNB

RONALD HUTCHINSON,

      Plaintiff,

v.

ANNIE HOLESTINE, Administrative Director, individually,
EILEEN NEWMAN, Case Manager Supervisor, individually, and
LES GODWIN, Community Parole Officer, individually,

      Defendants.

---

**ORDER AFFIRMING IN PART AND REJECTING IN PART JUNE 3, 2011
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE, AND GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

---

      This case was referred to United States Magistrate Judge Boyd N. Boland,

pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  On June 3, 2011, the Magistrate

Judge issued a Recommendation (Doc. # 60) concerning Defendant Les Godwin's

Motion to Dismiss (the "Godwin Motion") and Defendants Annie Holestine and Eileen

Newman's joint Motion to Dismiss (the "Holestine Motion").  The Magistrate Judge

recommended that the Godwin Motion (Doc. # 32) be granted and the Holestine Motion

(Doc. # 41) be granted in part and denied in part.  On July 5, 2011, Plaintiff Ronald

Hutchinson, proceeding *pro se*, filed timely objections to the Recommendation.[1]  (Doc. #

---

[1] Pursuant to an Order granting Plaintiff's Motion for Extension of Time, Plaintiff had until
July 8, 2011 to file his objections.  (Doc. # 64.)

66.)  Defendants Holestine and Newman responded on July 15, 2011.  (Doc. # 69.)  For

the reasons stated below, the Court AFFIRMS IN PART and REJECTS IN PART the

June 3, 2011 Recommendation of the Magistrate Judge.

## I.  <u>BACKGROUND</u>

Plaintiff is currently a state prisoner incarcerated at the Colorado Territorial

Correctional Facility in Cañon City, Colorado.  At all times relevant to the claims set

forth in Plaintiff's Second Amended Complaint ("Amended Complaint"), Plaintiff was in

the custody of the Colorado Department of Corrections ("CDOC"), serving a period of

parole at the Williams Street Center ("the Williams Center"), a residential community

corrections center.

The following facts are taken from the "Nature of the Case" section of Plaintiff's

Amended Complaint.  (Doc. # 16 at 4-8.)  On March 6, 2009, Plaintiff was transferred to

the Williams Center.  In June 2009, Plaintiff filed administrative grievances against

Defendant Newman, the Case Manager Supervisor at the Williams Center, and an

unnamed night shift supervisor "concerning their conduct and for denying Plaintiff

access to the courts."[2]  (*Id.* at 5.)

On September 20, 2009, Plaintiff was told to leave the dayroom area because

he had been placed on "Suspended Privileges."  Plaintiff alleges that he spoke with

Defendant Newman on September 23, 2009, and "it was confirmed that Plaintiff had

---

[2] All citations to page numbers in the Amended Complaint refer to the numbering used
by the Court's CM/ECF docketing system and not to the documents's original numbering.

been placed on [Suspended Privileges] for no apparent reason." (*Id.* at 5.)  Plaintiff

informed Defendant Newman that he was intending to file a grievance.  Twenty minutes

after leaving Defendant Newman's office, Plaintiff was told that Defendant Holestine, the

Administrative Director of the Williams Center, wanted to see him in her office.

Defendants Holestine and Newman were waiting when Plaintiff arrived.  Defendant

Holestine accused Plaintiff of causing problems by filing grievances and told Plaintiff

that he had two weeks to get a job or he would be regressed to prison.  Later that day,

Plaintiff was called back to Defendant Holestine's office where he was forced to sign a

job contract that was drafted by Defendants Holestine and Newman.  On September 24,

2009, Plaintiff filed a grievance concerning these events.

On September 28, 2009, Defendant Newman wrote a "frivolous incident report on

the Plaintiff for disobeying a direct order." (*Id.* at 6.)  On October 15, 2009, Defendant

Newman "conspired" with Peter Jensen, a case manager at the Williams Center, to draft

another job contract.  Mr. Jensen wrote another incident report, stating that Plaintiff had

failed to obtain employment within the time period specified in the job contract.

Plaintiff filed yet another grievance on October 20, 2009, claiming that

Defendants were filing frivolous incident reports against Plaintiff.  The next day,

Defendant Jensen wrote two more incident reports stating that Plaintiff disobeyed a

direct order by failing to visit three job location sites.  Plaintiff alleges that Defendants

Holestine, Newman, Godwin, and Mr. Jensen then conspired to reduce Plaintiff's law

library time from four days per week to one day per week.  Despite this reduced access,

Plaintiff filed another grievance on November 2, 2009.

On December 6, 2009, Plaintiff was tested for illegal substances.  On December

9, 2009 Plaintiff's urinalysis came back positive.  Plaintiff was subsequently arrested

and removed from the Williams Center.  Plaintiff alleges that other residents at the

Williams Center who had one positive urinalysis were not arrested or terminated from

the program.

Plaintiff filed his first Complaint on June 14, 2010.  (Doc. # 3.)  Presently before

the Court is Plaintiff's Amended Complaint.  (Doc. # 16.)  In the Amended Complaint,

Plaintiff asserts claims against Defendants Holestine, Newman, and Godwin.[3]

Specifically, Plaintiff asserts (1) a First Amendment access to court claim brought

against all Defendants; (2) multiple First Amendment retaliation claims against various

combinations of Defendants; (3) a Fourteenth Amendment equal protection claim

brought against Defendant Newman for "selectively singling Plaintiff out and forcing

Plaintiff to sign a job contract"; and (4) a Fourteenth Amendment equal protection claim

brought against all Defendants for sending Plaintiff back to prison after one positive

urinalysis.  (Doc. # 16).

In response to the Amended Complaint, Defendants Holestine, Newman, and

Godwin filed their respective motions to dismiss for failure to state a claim upon which

---

[3] Plaintiff also asserted claims against Mr. Jensen.  However, Mr. Jensen is no longer a defendant in this case because the claims against him were dismissed for failure to prosecute on March 11, 2011, pursuant to D.C.COLO.LCivR 41.1.  (*See* Doc. # 57.)

relief can be granted.  (Doc. ## 32, 40).  In his Recommendation, the Magistrate Judge
concluded that dismissal of Plaintiff's claims was warranted, with the exception of
Plaintiff's retaliation claim against Defendant Holestine for her alleged involvement in
forcing Plaintiff to sign a job contract.  (Doc. # 60 at 15.)

## II. <u>STANDARD OF REVIEW</u>

### A.    RECOMMENDATION OF MAGISTRATE JUDGE

When a magistrate judge issues a recommendation on a dispositive matter,
a district court judge is required to "determine *de novo* any part of the magistrate judge's
[recommendation] that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An
objection is properly made if it is both timely and specific.  *United States v. One Parcel
of Real Property Known As 2121 East 30th St.*,73 F.3d 1057, 1059 (10th Cir. 1996).  An
objection is timely if made within 14 days after the magistrate judge issues his
recommendation.  *Id.*  An objection is sufficiently specific if it "enables the district judge
to focus attention on those issues – factual and legal – that are at the heart of
the parties' dispute."  *See id.* (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)).
If objections are not made or if made improperly, the Court has discretion to review the
recommendation under whatever standard it deems appropriate.  *Summers v. Utah*, 927
F.2d 1165, 1167 (10th Cir. 1991).  In conducting its review, "[t]he district judge may
accept, reject, or modify the [recommendation]; receive further evidence; or return the
matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

**B.**    *PRO SE* **PLAINTIFF**

Because Plaintiff is proceeding *pro se*, the Court "review[s] his pleadings and
other papers liberally and hold[s] them to a less stringent standard than those drafted by
attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citing *Haines
v. Kerner*, 404 U.S. 519, 520 (1972)).  However, a *pro se* litigant's "conclusory
allegations without supporting factual averments are insufficient to state a claim upon
which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).
A court may not assume that a plaintiff can prove facts that have not been alleged, or
that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated
Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526
(1983).  *See also Whitney v. N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may
not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake
v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not
"construct arguments or theories for the plaintiff in the absence of any discussion of
those issues").  In addition, *pro se* litigants must follow the same procedural rules that
govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

**C.**    **MOTIONS TO DISMISS**

Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim
for "failure to state a claim upon which relief can be granted."  The complaint will survive
a motion to dismiss only if it "contains 'enough facts to state a claim to relief that is
plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177

(10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, a court "accept[s] all the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff."  *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n.1 (10th Cir. 1994)).  Nevertheless, the courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "[A] complaint does not suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949.  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III.  ANALYSIS

In his Objections, Plaintiff largely relies on the allegations asserted in his

Amended Complaint without directing the Court's attention to any specific errors in the

Recommendation.  Nonetheless, the Court has conducted a *de novo* review of this

matter, including carefully reviewing all relevant pleadings, the Recommendation,

Plaintiff's Objections to the Recommendation, and Defendants Holestine and Newman's

Response to the Objections.  Based on this review, the Court agrees with the

Magistrate Judge that Defendant Godwin's Motion to Dismiss should be granted.

However, the Court disagrees with the Recommendation insofar as it found that Plaintiff

had stated a retaliation claim against Defendant Holestine for her alleged involvement in

requiring Plaintiff to sign a job contract. The Court finds that Plaintiff has not stated a

claim upon which relief may be granted and the Holestine Motion should, therefore, be

granted in its entirety.  In the interest of thoroughness, the Court will address all of

Plaintiff's claims.

## A.    FIRST AMENDMENT ACCESS TO COURTS CLAIM

In his first claim for relief, Plaintiff contends that Defendants violated his First

Amendment right to access the courts "by reducing the amount of time Plaintiff would be

allowed to go to the law library from four days per week, to one day per week for no

apparent reason."  (Doc. # 16 at 9.)

The right to access the courts is a fundamental constitutional right.  *Bounds v.*

*Smith*, 430 U.S. 817, 828 (1977).  However, a convicted person who alleges that he

8

was denied access to the courts must show actual injury by demonstrating that "the denial of legal resources hindered [his] efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

Plaintiff alleges that the reduction in access to the law library denied him the opportunity to pursue legal matters in court, as well as other grievances that had been filed.  As the Magistrate Judge found, Plaintiff's vague and conclusory allegations are inadequate to support this claim.  A correctional facility's constitutional obligation to provide access to courts does not mean that correctional facilities must provide unlimited access.  *See id.* (noting that states are not required to give prisoners unlimited access to a law library, and prisoners do not have the right to select the method by which access will be provided).  Plaintiff, by his own admission, was still allowed to use the law library one day a week.  Plaintiff does not explain how the reduced access hindered his efforts to pursue a nonfrivolous claim. *See id.* (holding that severe restrictions of prisoner's law library privileges was not a constitutional violation where the prisoner failed to allege that the restrictions hindered his efforts to pursue a nonfrivolous legal claim).  To the extent that Plaintiff alleges that he was denied the opportunity to pursue hypothetical legal action, such a vague allegation does not suffice to establish the "actual injury" necessary to confer standing.  Thus, the Court agrees with the Magistrate Judge that Plaintiff failed to state an access to courts claim.

B.     RETALIATION CLAIMS

Prison officials may not retaliate against a prisoner because the prisoner has

engaged in constitutionally protected activity.[4]  *Smith v. Maschner*, 899 F.2d 940, 947

(10th Cir. 1990).  "This principle applies even where the action taken in retaliation would

be otherwise permissible."  *Id.* at 948.  However, a prisoner is "not inoculated from the

normal conditions of confinement experienced by convicted [persons] serving time in

prisons merely because he has engaged in protected activity."  *Peterson v. Shanks*, 149

F.3d 1140, 1144 (10th Cir. 1998).

In order to sustain a First Amendment retaliation claim, Plaintiff "must show that

(1) he engaged in protected activity; (2) he suffered an adverse action; and (3) that

a causal connection exists between the protected activity and the adverse action."

*Escobar v. Reid*, 668 F. Supp. 2d 1260, 1276 (D. Colo. 2009).  An action is adverse if

it "would chill a person of ordinary firmness from engaging in protected activity in the

future."  *Strope v. McKune*, 382 F. App'x 705, 710 n.4 (10th Cir. 2010) (quoting *Mallard

v. Tomlinson*, 206 F. App'x 732, 737 (10th Cir. 2006)).  The causal connection element

requires a prisoner to "show that a retaliatory motive was the but-for cause of the

challenged adverse action."  *Strope*, 382 F. App'x at 710 (citing *Peterson*, 149 F.3d at

1144).  To prevail on a claim for retaliation, a convicted person "must allege *specific*

---

[4] Although Plaintiff was on parole at all relevant times, he remained in the custody of the
CDOC and the same standards that govern claims brought by prisoners are applicable in this
case.  *See Purkey v. Green*, Nos. 01-3134, 99-3356, 2005 WL 627959, at *12 n.54 (D. Kan.
Feb. 24, 2005).

*facts* showing retaliation because of the exercise of the prisoner's constitutional rights."

*Peterson*, 149 F.3d at 1144 (emphasis in original).

In his Amended Complaint, Plaintiff alleges that Defendants violated the

First Amendment by retaliating against him for filing administrative grievances by

(1) reducing his library time; (2) forcing him to sign a job contract; and (3) having him

terminated from the Williams Center and sent back to prison.[5]  For the following

reasons, the Court finds that Plaintiff has failed to allege sufficient facts to sustain any of

these retaliation claims.

     1.   <u>Requiring Plaintiff to Get a Job</u>

Plaintiff alleges that he informed Defendant Newman on September 23, 2009

that he was intending to file a grievance as a result of being placed on suspended

privileges.  Twenty minutes later, Plaintiff was told to go to Defendant Holestine's office

where he met with Defendants Holestine and Newman.  Plaintiff alleges that Defendant

Holestine accused him "of causing problems by filing grievances," and that she told him

that he had "two weeks to get a job or [he] would be sent back to prison."  (Doc. # 16

at 6).  Later that day, at about 4 p.m., Plaintiff was directed to return to Defendant

---

    [5]  In his Recommendation, the Magistrate Judge credited Plaintiff with bringing a retaliation claim based on his placement on suspended privileges.  (Doc. # 60 at 9-10.)  Even liberally construing the Amended Complaint, however, it does not appear that Plaintiff actually asserted this claim. *See Drake*, 927 F.2d at 1159 (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues") Plaintiff alleged that Defendants Holestine and Newman retaliated against him in response to his filing a grievance concerning his placement on suspended privileges.  He does not appear to allege that his placement on suspended privileges itself was in retaliation to filing grievances.  (Doc. # 16 at 11.)

Holestine's office where he was given a contract to get a job; the contract was allegedly

drafted by Defendants Holestine and Newman.[6]  (*Id.*, ¶ 9.)

This allegation satisfies the first element of a retaliation claim because filing

administrative grievances is protected constitutional activity.  *See Fogle v. Pierson*, 435

F.3d 1252, 1264 (10th Cir. 2006); *Escobar*, 668 F. Supp. 2d at 1303.  The Court also

finds that Plaintiff's allegations are sufficient to satisfy the causal connection element of

a retaliation claim against both Defendants Holestine and Newman.[7]  Plaintiff alleges

that he was called into Defendant Holestine's office a mere twenty minutes after he

informed Defendant Newman that he was intending to file a grievance.  Although

temporal proximity standing alone is not sufficient to show causal connection, *see*

*Friedman v. Kennard*, 248 F. App'x 918, 922 (10th Cir. 2007), the timing is certainly

suspicious.  Plaintiff also alleges that Defendant Holestine told him that he was causing

problems by filing grievances.  In conjunction with the suspicious timing, Plaintiff has

---

[6]  In his Objections, Plaintiff notes that he had alleged that Defendant Godwin was also present at this second meeting.  Thus, Plaintiff contends that this allegation was sufficient to state of claim of retaliation against Defendant Godwin. (Doc. # 66 at 3.)  However, the claim relating to this alleged act of retaliation was expressly brought only against Defendants Holestine and Newman. (Doc. # 16 at 11.)  Plaintiff cannot retroactively assert a claim against Defendant Godwin through his objections when the Amended Complaint contains no such claim.  In any event, Plaintiff's allegations are not sufficient to state a claim against Defendant Godwin for this alleged act of retaliation.

[7]  The Magistrate Judge found that Plaintiff's allegations were sufficient to state a claim against Defendant Holestine, but not against Defendant Newman.  The Court disagrees with this finding as it can reasonably be inferred that Defendant Newman told Defendant Holestine that Plaintiff was planning to file another administrative grievance.  According to the Amended Complaint, Defendant Newman was present at the meeting, she did not object to Defendant Holestine's comments, and she helped draft the job contract.  However, this point is largely academic because the Court finds that Plaintiff failed to show that being forced to sign a job contract was sufficiently adverse to support his retaliation claim.

plead sufficient facts to show that it is plausible that Defendants Holestine and Newman were motivated by Plaintiff's stated intention to file a grievance.

Although Plaintiff's Amended Complaint satisfies the first and third elements of a retaliation claim, the Court finds that Plaintiff has not stated a claim upon which relief may be granted because he has not adequately alleged that being required to find a job is an adverse action. Plaintiff does not explain how this action caused him to suffer any loss or imposed any burden that would "deter a person of ordinary firmness" from exercising his constitutional right to file grievances. *See Strope*, 382 F. App'x at 710 n.4 (expressing doubt that removal from a job in the prison laundry constituted an adverse action); *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (affirming summary judgment where the record contained insufficient evidence that work assignments "would chill an inmate of ordinary firmness from filing grievances").  The Court also observes that Plaintiff filed multiple administrative grievances after he was forced to sign this job contract, including one the very next day.  The Court acknowledges that Defendants are not insulated from liability because Plaintiff continued to pursue his protected activity.  *See Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005). However, the Court's conclusion that being forced to sign a job contract is not sufficiently adverse to support a retaliation claim (at least as plead here) is supported by the fact that Plaintiff was not at all deterred from filing grievances.    For these reasons, the Court rejects this aspect of the Recommendation and finds that Plaintiff has failed to

adequately allege that he has suffered an adverse action.  Dismissal of this retaliation

claim is therefore warranted.

       2.   <u>Reduction in Library Time</u>

       Plaintiff alleges that after filing a grievance on October 20, 2009, Defendants

retaliated against him by reducing his access to the law library from four days per week

to one day per week.[8]  As stated above, the filing of administrative grievances is

protected constitutional activity.  However, Plaintiff has not pled sufficient facts to show

that "but for the retaliatory motive, the adverse action would not have taken place."

*Schmitt v. Rice*, 421 F. App'x 858, 862 (10th Cir. 2011).  Although Plaintiff claims that

Defendants' conduct was motivated by their desire to retaliate against him for filing

grievances, Plaintiff's "attribution of retaliatory motive is conjectural and conclusory."

*Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010).  The only indication of

a retaliatory motive is the temporal proximity between the adverse action and the

protected activity.  Absent supporting factual allegations, however, mere temporal

proximity between a protected constitutional activity and an adverse action "does

not constitute sufficient circumstantial proof of retaliatory motive to state a claim."

*Friedman*, 248 F. App'x at 922.  Furthermore, Plaintiff has not alleged that this action

would deter "a person of ordinary firmness from engaging in protected activity in the

future."  *Strope*, 382 F. App'x at 710 n.4.  It is unclear how the reduction in law library

---

      [8]  Although the Court has already found that Plaintiff has not sufficiently alleged an access to courts claim, the alleged reduction in his law library access can still support a First Amendment retaliation claim.  *See Smith*, 899 F.2d at 948.

time would satisfy the adverse action element of a retaliation claim considering that Plaintiff was still allowed one day of library access per week.  Plaintiff evidently had ample time to write grievances as shown by the fact that he continued to write grievances after his library access was reduced.  Thus, the Court agrees with the Magistrate Judge that Plaintiff has failed to allege a First Amendment retaliation claim for the reduction of law library access.

       3.   <u>Termination from the Williams Center Program</u>

In his Amended Complaint, Plaintiff alleges that on December 9, 2009, Defendants Holestine, Newman, and Godwin arrested him and sent him back to prison in retaliation for filing grievances.  (Doc. # 16 at 13.)  In contrast to Plaintiff's other retaliation claims, regression to prison clearly constitutes an adverse action.  However, this claim is also deficient because Plaintiff has not plead sufficient facts to show that "but for the retaliatory motive, the adverse action would not have taken place."  *Schmitt*, 421 F. App'x at 862.  Although Plaintiff submitted grievances on September 24, October 21, and November 2, 2009, he was not terminated from the Williams Center program until after he tested positive for illegal substances on December 9, 2009 (more than a month after his last grievance).  This passage of time, with the intervening positive urinalysis, seriously undermines Plaintiff's allegation of retaliatory conduct.  *See Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1278 (10th Cir. 2007) (an inference of retaliatory motive may be undermined by evidence of intervening events).  Although Plaintiff asserts that other parolees housed at the

Williams Center were not regressed to prison after one positive urinalysis, this allegation is not sufficient to show retaliatory motive as Plaintiff cannot show that he was similarly situated to the other parolees.[9]   Plaintiff offers no specific facts that would suggest Defendants acted with an improper motive.  Thus, the Court agrees with the Magistrate Judge that the allegations contained in the Amended Complaint fall short of establishing a causal connection between Plaintiff's termination from the Williams Center and his filing of grievances.

## C.   EQUAL PROTECTION CLAIMS

Plaintiff also brings two distinct equal protections claims based on his being required to sign a job contract and his regression to prison.  In support of these claims, Plaintiff asserts that other unemployed parolees at the Williams Center were not required to find a job, and that other parolees who had one positive urinalysis were not arrested and terminated from the Williams Center.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, § 1.  This clause prohibits the government from treating similarly situated individuals differently.   *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Because Plaintiff has not asserted that his different treatment is based on any suspect

---

[9]  Plaintiff's inability to show that he was similarly situated to other parolees will be discussed more fully in the section of analysis concerning Plaintiff's equal protection claims.

classification, Plaintiff must show that (1) he is similarly situated to other parolees who were treated differently and (2) the difference in treatment bears no rational relation to legitimate penological interests.  *See Fogle*, 435 F.3d at 1261.  Given the wide discretion afforded to prison officials and the many relevant factors that prison officials may consider when making decisions,[10] a parolee "who is not part of a suspect class faces a difficult task to state an equal protection claim."  *Magluta v. U.S. Fed. Bureau of Prisons*, No. 08–cv–00404, 2009 WL 1504749, at *5 (D.Colo. May 28, 2009) (noting that the requirement showing that a convicted person is similarly situated to other convicted persons "is arduous, if not impossible").

As the Magistrate Judge found, Plaintiff has not alleged sufficient facts to show that he was similarly situated to others at the Williams Center.  Although Plaintiff's conclusorily asserts that he was similarly situated, his Amended Complaint is devoid of any factual allegations that would support his claim.  As the Tenth Circuit has stated:

> it is "clearly baseless" to claim that there are other inmates who are similar in every relevant respect. Not only might the [correctional institution] classify inmates differently because of slight differences in their histories, but some still seem to present more risk of future conduct than others. A prisoner's claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable.

*Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (quoting *Templeman*, 16 F.3d at 371).  Plaintiff fails to "plausibly articulate how it could be that there are other

---

[10] As the Tenth Circuit has recognized, the revocation of parole "often [turns] on subjective policy choices and individual assessments of the parolee's and society's interest in reincarceration made by experienced parole board members."  *Barton v. Malley*, 626 F.2d 151, 155 (10th Cir. 1980).

17

parolees who are similar in every relevant respect or address the likelihood that

Defendant[s] might treat parolees differently because of the differences in their

histories." *Fries v. Archuleta*, No. 10-cv-00337, 2010 WL 4320474, at *4 (D. Colo. Sept.

27, 2010) (internal quotation marks and citation omitted).

The Court also finds that Plaintiff has failed to show that Defendants' conduct

was not related to a legitimate penological interest.  Requiring a parolee to seek work

and to abstain from narcotics are both related to legitimate penological interests.  *See*

*Beerheide v. Suthers*, 286 F.3d 1179, 1188 (10th Cir. 2002) ("A major goal of parole is

rehabilitation.")  Thus, Plaintiff's equal protection claims are properly dismissed because

the allegations in his Amended Complaint are not sufficient to show that he was

similarly situated to other parolees and that his treatment was not related to  legitimate

penological interests.

**D.    CONSPIRACY**

Plaintiff's Amended Complaint contains numerous allegations of conspiracy

between Defendants.[11]  In order to state a conspiracy under 42 U.S.C. § 1983,

"a plaintiff must allege specific facts showing an agreement and concerted action

amongst the defendants because conclusory allegations of conspiracy are insufficient to

---

[11]   Additionally, Plaintiff invokes 42 U.S.C. § 1985(3), which prohibits conspiracies to deprive a person of equal protection or equal privileges and immunities under the law.  Section 1985(3) "applies only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Hall v. Wilson*, No. 10-cv-01460, 2010 WL 3310357, at *2 (D. Colo. Aug. 18, 2010) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Thus, Plaintiff cannot sustain a conspiracy claim under § 1985(3) because he does not allege that he was part of any class.

state a valid § 1983 claim." *Brooks v. Gaenzle*, 614 F.3d 1213, 1228 (10th Cir. 2010).

More fundamentally, "a deprivation of a constitutional right is essential to proceed under

a § 1983 conspiracy claim . . .." *Snell v. Tunnell*, 920 F.2d 673, 701-02 (10th Cir. 1990).

Plaintiff has not shown that he has not been deprived of any constitutional rights, thus,

his conspiracy claim necessarily fails.

### E.    ATTORNEYS' FEES

In the Holestine Motion, Defendants Holestine and Newman request that the

Court award them their reasonable attorney fees pursuant to 42 U.S.C. § 1988.

The Court will not entertain this request because the Local Rules provide that

[a] motion shall not be included in a response . . . to the original motion.  A motion shall

be made in a separate paper."  D.C.COLO.LCivR 7.1(C).

Although Defendants may file a motion for attorneys' fees by "separate paper,"

the Court observes that a prevailing defendant may recover such fees only where the

lawsuit was "vexatious, frivolous, or brought to harass or embarrass the defendant."

*Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983).  Thus, Defendants are presented

with a "difficult standard to meet, to the point that rarely will a case be sufficiently

frivolous to justify imposing attorney fees on the plaintiff."  *Mitchell v. City of Moore*,

*Okla.*, 218 F.3d 1190, 1203 (10th Cir. 2000); *see also Clajon Prod. Corp. v. Petera*,

70 F.3d 1566, 1581 (10th Cir. 1995) (stating that attorneys' fees are awarded to

defendants under § 1988 only in "rare circumstances").

19

## IV.  **CONCLUSION**

Based on the foregoing, the Court REJECTS the Magistrate Judge's

Recommendation (Doc. # 60) insofar as it denied dismissal of Plaintiff's retaliation claim

against Defendant Holestine.  The Court AFFIRMS the Magistrate Judge's

Recommendation in all other respects.  Plaintiff's Objections (Doc. # 66) are

OVERRULED.

Accordingly, it is ORDERED that:

(1)    Defendant Godwin's Motion to Dismiss (Doc. # 32) is GRANTED;

(2)    Defendants Holestine and Newman's Motion to Dismiss (Doc. # 40) is

GRANTED, except to the extent they move for an award of attorneys'

fees; and

(3)    This case is DISMISSED.

DATED:  September __02__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge